J-S68017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMAR G. BAGLEY | |
| Appellant | No. 3221 EDA 2013 |

Appeal from the Judgment of Sentence October 25, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0008532-2012

BEFORE: ALLEN, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED DECEMBER 12, 2014**

Appellant, Jamar G. Bagley, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his bench trial convictions for possession of a firearm prohibited, carrying a firearm without a license, and driving with a suspended or revoked license.[1] We affirm.

The trial court sets forth the relevant facts and procedural history of this appeal as follows:

> On the evening of November 29, 2012 at approximately 11:27 P.M., Officer Steven Corsi, of the Ridley Park Police Department, was on duty and working patrol along Chester Pike, which is located in Delaware County, Pennsylvania. Officer Corsi was in full uniform and in an unmarked patrol car, and was traveling with Officer Josh Powley. Officer

_____

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1); 75 Pa.C.S. 1543(a), respectively.

Powley was driving. During their patrol, Officer Corsi observed a white Honda sedan traveling westbound on Chester Pike that had a registration lamp out. Upon seeing the vehicle's lamp, Officer Powley activated the emergency lights on his police vehicle in order to make a traffic stop. The driver of the vehicle proceeded about a block, turned left onto Stewart Avenue, and pulled over to the right shoulder of the road. This took approximately 30 seconds. Officer Corsi observed that there was one person in the vehicle. Through the rear window, he observed this individual lean across the center console and reach towards the passenger side of the vehicle.

As Officers Corsi and Powley approached the vehicle, the individual continued to reach towards the passenger side of the vehicle. The individual, ([Appellant]) was ordered to put his hands on the steering wheel. [Appellant] appeared nervous and was 'very jittery.'

Officer Powley approached the driver's side of the vehicle and made contact with [Appellant]. [Appellant] did not provide a driver's license, but provided a state ID from North Carolina. The officers then ran the Appellant's name through their system and discovered that he had a suspended driver's license. The car was registered to Nafeassia Powell and Deborah Gordon. It was later discovered that one of the registered owners, Nafeassia Powell, who is Appellant's girlfriend, had given him permission to the drive the vehicle that day. Following the officers' discovery of [Appellant's] suspended license, they advised Appellant that he was going to be mailed citations.

Based upon the fact that [Appellant] did not have a valid driver's license, Officer Corsi asked [Appellant] to step away from the vehicle. [Appellant] was taken to the rear of the vehicle and [patted] down for officer safety. He was asked 'if there was anything else in the vehicle, any type of weapons or any narcotic, anything like that.' [Appellant] answered no. The officers did not tell [Appellant] that he was free to leave. The officers did tell [Appellant] that, because no one else was in the car to drive the vehicle, the vehicle was going to be towed and impounded. Officer Corsi explained that the policy of the Ridley Park Police Department is to tow a vehicle when the

driver is determined to have a suspended license. The policy of the police department also requires the vehicle to be searched and inventoried for items of value. Before performing the search, the officers asked [Appellant] if they could search the vehicle. He replied yes. Following a search of the vehicle, a silver revolver was recovered from underneath the front passenger seat in the vehicle.

Officer Corsi secured the weapon and advised [Appellant] that they located a weapon. [Appellant] stated that 'he had it for protection.' [Appellant] was then detained while the officers checked to see if he had a permit for the firearm. The officers ran a search and discovered that [Appellant] was not licensed to carry a firearm in the state of Pennsylvania. Appellant was later placed in handcuffs.

\* \* \*

Appellant was arrested and charged with possession of a firearm prohibited, firearms not to be carried without a license, prohibited offensive weapons, and related offenses….

On October 1, 2013, Appellant was tried before the undersigned on charges of possession of a firearm prohibited, firearms not to be carried without a license, prohibited offensive weapons, driving while operating privilege is suspended or revoked, and general lighting requirement - no headlights. At trial, the Commonwealth and defense counsel stipulated to the following:

> The first being Exhibit Commonwealth C-1, the incident report dated November 29, 2012; Commonwealth Exhibit C-2, the Affidavit of Probable Cause; Commonwealth Exhibit C-3, the certified driving history of Mr. Bagley[;] Commonwealth Exhibit C-4, State Police certification for licensing status of Mr. Bagley; Commonwealth Exhibit C-5, the certified conviction for Mr. Bagley from transcript number 5981 of 2006 dated December 18 of 2006; Commonwealth Exhibit C-6, the ballistics report from Detective Grandizio dated December 5, 2012; Commonwealth Exhibit C-7, the testimony from the preliminary hearing dated December 17, 2012;

- 3 -

> Commonwealth Exhibit C-8, testimony on the Defendant's Motion to Suppress held before the Honorable Gregory M. Mallon dated August 29, 2013; Commonwealth Exhibit C-9, a Kimmel brand model 5000, 32 caliber revolver, serial number G44611. It is further stipulated from the time each of the Government's exhibits came into the Government's possession through the time of their introduction into evidence a proper chain of custody was maintained and the exhibits were not altered, tampered with or modified in any way. The Commonwealth Exhibit C-9 was analyzed by Detective Louis Grandizio who, if called to testify, would be qualified in the Field of Forensic Firearms Examination as an expert and would testify in that capacity to the result of his analysis that the revolver, R-1, was test fired and found to be operable. R-1 is the Kimmel brand model 5000 caliber 32 revolver, serial G44611, submitted by the Ridley Park Police Department and recovered from the vehicle Mr. Bagley was operating on November 29, 2012. And the results of Detective Grandzio's analysis are contained in his ballistics report dated December 5, 2012 and incorporated herein as Exhibit C-6.

[Appellant] took the stand at trial and denied making a statement to the police. He further stated that the police did not ask for consent to search the vehicle.

Following the trial, this court found Appellant [guilty] of possession of a firearm prohibited, firearms not to be carried without a license, and driving while operating privilege is suspended or revoked. A presentence investigation was conducted and on October 25, 2013 this court sentenced Appellant as follows:

- Possession of a firearm prohibited: 40 months to 80 months of incarceration and 5 years of consecutive probation;
- Firearms not to be carried without a license: 40 months to 80 months of incarceration[1];
- Driving while operating privilege is suspended or revoked: [a] $200 fine.

> [1] To run concurrent to his sentence on possession of a firearm prohibited.
>
> Appellant was found not to be RRRI eligible, was given credit for time served from the period of 11/29/12 through 10/25/13, and was ordered to forfeit the gun recovered.

Trial Court Opinion, filed April 30, 2014, at 1-6 (internal citations to the record omitted).

On November 13, 2013, Appellant filed a *pro se* notice of appeal. On January 15, 2014, the court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal, within twenty-one (21) days, pursuant to Pa.R.A.P. 1925(b). The prothonotary gave Appellant written notice of the court's order, but did not give such notice to Appellant's counsel. Appellant filed a counseled Rule 1925(b) statement on March 11, 2014.

Appellant raises the following issues for our review:

> WHETHER APPELLANT HAS NOT WAIVED HIS ISSUES ON APPEAL BASED ON NON-COMPLIANCE WITH PA.R.A.P. 1925, FOR UNTIMELY FILING HIS 1925(B) STATEMENT, WHERE THE DELAY IN FILING STEMMED FROM THE PROTHONOTARY'S FAILURE TO GIVE WRITTEN NOTICE OF THE TRIAL COURT'S 1925(B) ORDER TO APPELLANT'S ATTORNEY?[2]
>
> WHETHER APPELLANT'S CONVICTIONS FOR PERSONS PROHIBITED FROM POSSESSING A FIREARM AND CARRYING A FIREARM WITHOUT A LICENSE SHOULD BE VACATED, BECAUSE THE LOWER COURT ABUSED ITS

_____

[2] Although this issue was not raised in Appellant's Rule 1925(b) statement and is arguably waived, we must address it to determine whether Appellant's other issues are properly before this Court.

DISCRETION IN DENYING APPELLANT'S [SUPPRESSION] MOTION, WHERE FIREARM ATTRIBUTABLE TO APPELLANT'S POSSESSION WAS RECOVERED AS THE RESULT OF A COERCED CONSENSUAL SEARCH, CONDUCTED DURING THE COURSE OF AN INVESTIGATORY TRAFFIC STOP, WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE THAT APPELLANT HAD ENGAGED IN CRIMINAL ACTIVITY, WHICH VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR SEARCH AND SEIZURE UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, BY AND THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 8 OF THE PENNSYLVANIA STATE CONSTITUTION?

WHETHER APPELLANT'S CONVICTIONS FOR PERSONS PROHIBITED FROM POSSESSING A FIREARM AND CARRYING A FIREARM WITHOUT A LICENSE SHOULD BE VACATED, BECAUSE THE LOWER COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S SUPPRESSION MOTION, WHERE FIREARM ATTRIBUTABLE TO APPELLANT'S POSSESSION WAS RECOVERED AS THE RESULT OF THE POLICE OBTAINING APPELLANT'S CONSENT TO SEARCH VEHICLE, DURING THE COURSE OF AN INVESTIGATORY TRAFFIC STOP, WITHOUT FIRST ADVISING APPELLANT OF HIS MIRANDA RIGHTS, WHICH VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION, BY AND THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT , AND ARTICLE 1, SECTION 9 OF THE PENNSYLVANIA STATE CONSTITUTION?

WHETHER APPELLANT'S CONVICTION FOR PERSONS PROHIBITED FROM POSSESSING A FIREARM AND CARRYING A FIREARM WITHOUT A LICENSE SHOULD BE VACATED, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THAT APPELLANT WAS IN CONSTRUCTIVE POSSESSION OF [THE] FIREARM RECOVERED FROM UNDERNEATH OF [THE] PASSENGER [SEAT] OF [THE] AUTOMOBILE, THAT WAS OPERATED BY APPELLANT BUT OWNED BY ANOTHER PERSON?

Appellant's Brief at 5-6.

Before we address the merits of this appeal, we must determine whether Appellant timely filed his Rule 1925(b) statement in the trial court. If his statement was untimely, Pa.R.A.P. 1925(c)(3) obligates us to deem appellate counsel ineffective and to remand the case for the filing of a Rule 1925(b) statement *nunc pro tunc*. **Commonwealth v. Myers**, 86 A.3d 286, 289 (Pa.Super.2014). In this case, because the prothonotary failed to send the court's Rule 1925(b) order to Appellant's counsel, we will not find that Appellant's Rule 1925(b) statement is untimely.

The Pennsylvania Rules of Appellate Procedure provide, in relevant part:

> **Rule 1925. Opinion in Support of Order**
>
>       \*     \*     \*
>
>    **(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.**--If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").
>
>    (1) *Filing and service.*--Appellant shall file of record the Statement and concurrently shall serve the judge. Filing of record and service on the judge shall be in person or by mail as provided in Pa.R.A.P. 121(a) and shall be complete on mailing if appellant obtains a United States Postal Service Form 3817, Certificate of Mailing, or other similar United States Postal Service form from which the date of deposit can be verified in compliance with the requirements set forth in Pa.R.A.P. 1112(c). Service on

parties shall be concurrent with filing and shall be by any means of service specified under Pa.R.A.P. 121(c).

(2) *Time for filing and service.*--The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement. Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed. In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*.

\* \* \*

**(c) Remand.**
(1) An appellate court may remand in either a civil or criminal case for a determination as to whether a Statement had been filed and/or served or timely filed and/or served.

\* \* \*

(3) If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925.

Additionally, we note that the Pennsylvania Rules of Criminal Procedure provide in relevant part:

**Rule 114. Orders and Court Notices: Filing; Service; and Docket Entries**

**(A) Filing**

(1) All orders and court notices promptly shall be transmitted to the clerk of courts' office for filing. Upon receipt in the clerk of courts' office, the order or court

notice promptly shall be time stamped with the date of receipt.

(2) All orders and court notices promptly shall be placed in the criminal case file.

**(B) Service**

(1) A copy of any order or court notice promptly shall be served on each party's attorney, or the party if unrepresented.

(2) The clerk of courts shall serve the order or court notice, unless the president judge has promulgated a local rule designating service to be by the court or court administrator.

(3) *Methods of Service.* Except as otherwise provided in Chapter 5 concerning notice of the preliminary hearing, service shall be:

  (a) in writing by

   (i) personal delivery to the party's attorney or, if unrepresented, the party; or

   (ii) personal delivery to the party's attorney's employee at the attorney's office; or

   (iii) mailing a copy to the party's attorney or leaving a copy for the attorney at the attorney's office; or

   (iv) in those judicial districts that maintain in the courthouse assigned boxes for counsel to receive service, when counsel has agreed to receive service by this method, leaving a copy for the party's attorney in the box in the courthouse assigned to the attorney for service; or

   (v) sending a copy to an unrepresented party by certified, registered, or first class mail addressed to the party's place of residence, business, or confinement; or

(vi) sending a copy by facsimile transmission or other electronic means if the party's attorney, or the party if unrepresented, has filed a written request for this method of service as provided in paragraph (B)(3)(c); or

(vii) delivery to the party's attorney, or the party if unrepresented, by carrier service; or

(b) orally in open court on the record.

Pa.R.Crim.P. 114.

In **Commonwealth v. Lord**, our Supreme Court held that "[a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." 719 A.2d 306, 309 (1998). In **Commonwealth v. Castillo**, the Supreme Court re-affirmed the bright line rule set forth in **Lord** that mandates strict compliance with Rule 1925(b). 888 A.2d 775, 780 (Pa.2005). In **Castillo**, the Court specifically voiced its disproval of "prior decisions of the intermediate courts to the extent that they...created exceptions to **Lord** and have addressed issues that should have been deemed waived." **Id.**

Regarding our compliance with **Lord**, this Court has noted:

We have been strict in holding appellants to the dictates of [**Lord**] and its progeny. If we are going to do that, we should also be strict in requiring the trial court and clerk of courts to comply with the rules regarding notice of Rule 1925(b) orders.

\* \* \*

> The requirement that defendants be given notice of the need to file a Rule 1925(b) statement is not a mere technicality. If we are to find that defendants waived their constitutional rights, we must be sure that the clerk of the court did his or her job to advise the defendants that it was necessary to act.

*Commonwealth v. Davis*, 867 A.2d 585, 588 (Pa.Super.2005) (*en banc*).

*See also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224-26 (2014) (holding that failure by the prothonotary to "give written notice of the entry of a court order and to note on the docket that notice was given" will prevent waiver for timeliness pursuant to Pa.R.A.P. 1925(b)).

Instantly, Appellant filed a *pro se* notice of appeal, although he was represented by counsel. The prothonotary sent Appellant written notice of the trial court's order pursuant to Rule 1925(b), but sent no such notice to Appellant's counsel. Because the prothonotary failed to give written notice to Appellant's counsel, Appellant's issues will not be waived for failure to comply with timeliness requirements of Rule 1925(b). *See Davis, supra*; Pa.R.Crim.P. 114(B)(1). Thus, we address Appellant's remaining issues.

In his second and third issues, Appellant argues the trial court erred in denying his suppression motion. Specifically, Appellant claims the police officers stopped him without reasonable suspicion or probable cause that he had engaged in criminal activity. Appellant complains that the officers

should have advised him of his ***Miranda***[3] rights before obtaining his consent to search his vehicle, and that his consent to the search of his vehicle was coerced. Appellant concludes his federal and state constitutional rights have been violated and that his judgment of sentence should be vacated. We disagree.

As a preliminary matter, we observe that the trial court failed to enter findings of fact and conclusions of law following the suppression hearing, pursuant to Pennsylvania Rule of Criminal Procedure 581(I).[4] "Where a trial court fails to abide by Rule 581(I), however, this Court may look at the trial court's Rule 1925(a) opinion to garner findings of fact and conclusions of law." ***Commonwealth v. Stevenson***, 832 A.2d 1123, 1126-27 (Pa.Super.2003) (citing ***Commonwealth v. Reppert***, 814 A.2d 1196, 1200 (Pa.Super.2002)). ***See also Commonwealth v. Dutrieville***, 932 A.2d 240 (2007).

---

[3] ***Miranda v. Arizona***, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

[4] The Pennsylvania Rules of Criminal Procedure provide in relevant part:

> At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

Pa.R.Crim.P. 581(I).

In the instant case, the trial court issued a Rule 1925(a) opinion that adequately relates the court's findings of fact and conclusions of law. Thus, we are able to review Appellant's issues.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Gillespie*, ___ A.3d. ___, 2014 PA Super 245 (Oct. 27, 2014) (quoting *Commonwealth v. Williams*, 941 A.2d 14, 26–27 (Pa.Super.2008) (*en banc* ).

> Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).

Initially, we observe that there are three types of interactions between police officers and citizens. *Commonwealth v. Stevenson*, 832 A.2d

- 13 -

1123, 1126-27, (Pa.Super.2003). "Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." *Id.*

> Such interaction may be classified as a "mere encounter," an "investigative detention," or a "custodial detention." A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.
>
> 'The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the Federal Constitution.' *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa.1997). However, '[i]n determining whether reasonable suspicion exists for a *Terry* stop, the inquiry is the same under either Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution.' *Commonwealth v. McClease*, 750 A.2d 320, 324 (Pa.Super.2000).
>
> To determine if an interaction rises to the level of an investigative detention, *i.e.,* a *Terry* stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's

orders. ***Commonwealth v. Sierra***, 723 A.2d 644, 646 ([Pa.]1999). An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. ***Commonwealth v. Melendez***, 676 A.2d 226, 229 ([Pa.]1996). To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. ***Sierra, supra*** at 176, 723 A.2d at 647. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate. ***See Commonwealth v. Zhahir***, 751 A.2d 1153 (Pa.2000).

***Commonwealth v. Stevenson***, 832 A.2d 1123, 1127-29 (Pa.Super.2003).

Regarding custodial interrogations:

The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate ***Miranda*** warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

***Commonwealth v. Mannion***, 725 A.2d 196, 200 (Pa.Super.1999) (internal citations omitted). Generally, a traffic stop is considered an investigative rather than a custodial detention, "unless, under the totality of the circumstances, the conditions and duration of the detention become the functional equivalent of arrest." ***Id.*** Because "an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for ***Miranda*** purposes." ***Id.***

- 15 -

Police may stop a motor vehicle if an officer observes a traffic code violation, even if it is a minor offense. ***Commonwealth v. Chase***, 960 A.2d 108, 113 (Pa.2008); ***see also*** 75 Pa.C.S. § 6308(b).[5] The Vehicle Code provides that every vehicle "shall be equipped with a rear lighting system" including a "license plate light." 75 Pa.C.S. § 4303(b).

Instantly, the police officers stopped Appellant's vehicle after they observed that Appellant's registration light was not lit, in violation of the Vehicle Code. Thus, the initial stop was permissible. ***See Chase, supra.***

Because the police lawfully stopped Appellant, we must now decide whether Appellant voluntarily consented to the search of his vehicle. ***See Commonwealth v. Reid***, 811 A.2d 530, 545 (Pa.2002) ("If the court finds that…a lawful interaction preceded an alleged consent, the court must then determine whether the prosecution has adequately proven that the consent was made voluntarily and was not the product of duress or coercion").

_____

[5] The Vehicle Code provides:

> **(b) Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308.

A warrantless search is:

> unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1260-61 (Pa.Super.2008)

(internal citations omitted). Regarding the voluntariness of consent given,

this Court has further explained:

> In connection with [the inquiry into the voluntariness of a consent given pursuant to a lawful encounter], the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances…. [W]hile knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. . . . Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account….
>
> Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.

***Kemp***, 961 A.2d at 1261. Further, the Court outlined a non-exclusive list of factors pertinent to determining whether a defendant voluntarily consented to a search. ***Id.*** These factors include:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

***Id.***

Here, the encounter between police officers and Appellant never rose to the level of a custodial interrogation. After the officers stopped Appellant, one of the officers asked him for his license. Appellant, who was very nervous and jittery, was unable to produce a valid license, but handed the officer a state ID from North Carolina. A subsequent search of the system revealed that Appellant had a suspended driver's license. The officer then asked Appellant to step outside of the vehicle and patted him down for officer safety. The officers advised Appellant that they intended to tow his car because he did not have a valid license to operate the vehicle. One of the officers asked Appellant if he had any weapons in the car, and Appellant stated that he did not have any weapons. The officer then asked Appellant if he could search the vehicle and Appellant stated that the officer had his permission to search the vehicle.

- 18 -

Although the officers did not tell Appellant that he was free to leave, the detention did not rise to the functional equivalent of arrest. The officers did not handcuff Appellant or threaten him in any way. They merely asked Appellant if he would consent to a search of his vehicle. Thus, the encounter did not rise to the level of a custodial interrogation requiring *Miranda* warnings. Further, the officer's behavior was not coercive in any way. Therefore, Appellant's claims that state and federal constitutional rights were violated by a coerced consensual search of his vehicle are meritless.

In his final issue, Appellant argues there was insufficient evidence to establish that he was in constructive possession of the firearm recovered from underneath the passenger seat of his vehicle. Appellant concludes the court erred in determining that he possessed the gun and that his judgment of sentence should be vacated. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain

its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting ***Commonwealth v. Jones***, 874 A.2d 108, 120-21 (Pa.Super.2005)).

The offense of possession of a firearm prohibited is defined by statute as follows:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a) Offense defined.--**
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105. The Commonwealth may prove possession through proof of constructive possession:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to

control the contraband and the intent to exercise that control.' To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Parker,*** 847 A.2d 745, 750 (Pa.Super.2004). "As with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super.1996). "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa.Super.2003).

Here, the Commonwealth presented testimonial evidence to show that Appellant was the sole occupant of the vehicle at the time of the traffic stop, that officers observed Appellant reaching over to the passenger side of the vehicle, where the weapon was found, and that Appellant seemed nervous and jittery. Police officers testified that when they told Appellant that they found a firearm in the vehicle, Appellant told them that he had the firearm "for protection." Thus, the evidence presented at Appellant's trial was sufficient for the court to find all elements of the crime beyond a reasonable doubt. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/12/2014</u>