J-S74025-13

2014 PA Super 283

COMMONWEALTH OF PENNSYLVANIA,

                    Appellee

                    v.

DELANO E. PEREL,

                    Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 704 WDA 2013

Appeal from the Judgment of Sentence of March 27, 2013
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0000618-2011

BEFORE:  PANELLA, OLSON AND WECHT, JJ

DISSENTING OPINION BY OLSON, J.:        **FILED DECEMBER 23, 2014**

Because I believe that the trial court properly denied suppression, I would affirm Appellant's judgment of sentence.   Hence, I respectfully dissent.

In this case, the learned majority concludes that Appellant established an expectation of privacy in the shaving kit recovered by police from Ms. Smith's apartment.   Initially, the majority concludes that Appellant had a subjective expectation of privacy in the contents of his shaving kit because it was an opaque zippered bag, stored in Ms. Smith's bedroom, not exposed to public view, and because Appellant did not tell Ms. Smith about the contents

of his shaving kit.[1]  Majority Opinion, at * 6-8.  Next, the majority concludes that society would recognize Appellant's privacy expectation in the contents of his shaving kit as reasonable.  Majority Opinion, at * 7-10. The majority also considers whether Ms. Smith had actual or apparent authority to consent to a search of the contents of Appellant's zipped shaving kit which he stored in her apartment.  *Id.* at * 11.  The majority concludes that Ms. Smith lacked actual authority because she denied knowledge of the contents of the shaving kit.  *Id.*  The majority also concludes that it was unreasonable for police to believe that Ms. Smith had apparent authority to permit the police to search the contents of the shaving kit because:  (1) it was a man's shaving kit; (2) there were no markings, tags or other inscriptions to suggest that Ms. Smith had joint access to or co-ownership of the bag; (3) police were acting in response to a report that Appellant himself brandished

_____

[1] While the majority claims that Appellant "did not inform [Ms.] Smith of the contents of the bag[,]" Majority Opinion, at * 6, the record, which must be viewed in the light most favorable to the Commonwealth as the prevailing party on Appellant's motion to suppress, does not support this assertion. Neither Appellant nor Ms. Smith testified at the suppression hearing.  The only relevant testimony pertaining to this issue came from the officer who conducted the search of Ms. Smith's apartment.  The officer testified that, upon showing Ms. Smith the contents of the shaving kit, she disavowed knowledge of the contents and permitted police to continue searching.  N.T., 11/9/2011, at 48-49 ("I showed the items to the apartment renter, M[s.] Smith, and asked her if she knew about these and she said no.").  There was no evidence regarding what Appellant may or may not have told Ms. Smith about his shaving kit.  In the absence of such testimony, I do not believe that it is proper to draw an inference against the Commonwealth as the prevailing party before the trial court.

a leather shaving kit in the course of the robbery; and, (4) there was no evidence that Ms. Smith carried the shaving kit, or Appellant's other luggage, on her person. *Id.* at * 13-15.

The majority fails to distinguish between Appellant's shaving kit, as a **container** that outwardly displayed incriminating characteristics that were immediately apparent to the police when they lawfully entered Ms. Smith's bedroom, and the **contents** of Appellant's shaving kit that were revealed only after a search. This distinction is a critical component of any legal analysis tailored to the undisputed facts presented in this unique case. When this distinction is factored in to an examination of the current circumstances, I believe that the police were constitutionally justified in **seizing** Appellant's shaving kit under the plain view doctrine. First, there is no dispute that Ms. Smith had authority to consent to a search of her apartment, including her rear bedroom where Appellant openly stored his shaving kit. Thus, the police were at a lawful vantage point when they observed the shaving kit. Moreover, as demonstrated by the majority's recitation of the facts, the police immediately identified the incriminating features of the shaving kit[2] based upon the victim's description of the shaving kit bag used by Appellant during the commission of a gunpoint robbery. Under these unique circumstances, the seizure of the shaving kit

_____

[2] I refer here to the outward appearance of the shaving kit itself, not to its contents.

- 3 -

did not intrude upon Appellant's privacy interest or violate his Fourth Amendment rights. However, after careful consideration, I must concur in the learned majority's assessment that the ensuing warrantless search of the zippered shaving kit was not constitutionally justified. I cannot agree, however, that suppression is the appropriate remedy in view of the doctrine of inevitable discovery.

Our standard of review in addressing a challenge to the denial of a suppression motion is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. […T]he suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations and quotations omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Gillespie*, 2014 PA Super 245, at * 3 (citation omitted). These constitutional provisions

have been interpreted as protecting "those zones where one has a reasonable expectation of privacy." *Commonwealth v. Lawley*, 741 A.2d 205, 209 (Pa. Super. 1999) (citation omitted). "Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures." *Gillespie*, at *3. "While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and [the Pennsylvania Supreme Court] have recognized exceptions to the warrant requirement." *Id.* The United States Supreme Court has stated:

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. 347, 351 (1967)(internal citations omitted). As noted by Justice Harlan, in a concurrence in *Katz*,

> As the Court's opinion states, 'the Fourth Amendment protects people, not places.' The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place.' My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person has exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for

the expectation of privacy under the circumstances would be unreasonable.

**Katz**, 389 U.S. at 361 (Harlan, concurring).

The United States Supreme Court decision in **Horton v. California**, 496 U.S. 128 (1990) discusses the plain view doctrine in detail. In **Horton**, police officers investigating an armed robbery applied for a search warrant of the suspect's residence. The search warrant authorized a search for the proceeds of the robbery, but not the firearms used as described by the victim. During the course of the search, the police discovered the firearms in plain view and seized them. The defendant asked the California courts to suppress the weapons, but they denied relief.

In addressing the defendant's challenge to the denial of suppression, the **Horton** Court explained the prerequisites that must be met for the plain view exception to the warrant requirement:

> It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. [Next], not only must the item be in plain view; its incriminating character must also be "immediately apparent." [...Finally], not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

**Horton**, 496 U.S. at 136-137 (citations and footnotes omitted).

Relying upon **Horton**, this Court has described the plain view doctrine as follows:

- 6 -

> [t]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant, ***Coolidge v. New Hampshire***, 403 U.S. 443 (1971), as modified by ***Horton v. California***, 496 U.S. 128 (1990), and it was adopted by our Supreme Court in ***Commonwealth v. McCullum***, 602 A.2d 313 (Pa. 1992). The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location [and] the incriminating nature of the item was readily apparent; and [(3)] police had the lawful right to access the item.

***Commonwealth v. Anderson***, 40 A.3d 1245, 1248 (Pa. Super. 2012), *citing* ***Commonwealth v. Sodomsky***, 939 A.2d 363, 370 (Pa. Super. 2007).

This Court's *en banc* decision in ***Commonwealth v. Brown***, 23 A.3d 544 (Pa. Super. 2011), which involved a warrantless seizure of incriminating, but not illegal, items is instructive to the case herein. Brown robbed a gas station convenience store at gunpoint. A police officer on patrol witnessed Brown acting suspiciously before entering the store for one minute and then fleeing on foot. The police officer followed Brown in an unmarked police car and witnessed him get into a maroon mini-van and drive away. Police instituted a traffic stop and confirmed the robbery. An officer saw what appeared to be a black handgun inside the mini-van on the floor behind the driver's seat. Brown fled and police apprehended him. The police recovered the gun, which turned out to be a toy, and a black knit hat Brown wore during the commission of the robbery as reported by the victim.

- 7 -

Prior to trial, Brown filed a motion to suppress the evidence that was denied. A jury subsequently convicted Brown. On appeal, an *en banc* panel of this Court affirmed the denial of suppression and Brown's judgment of sentence. In discussing the plain view doctrine, the **Brown** Court determined that "where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right to access to seize the object in question." **Brown**, 23 A.3d at 557. Although **Brown** dealt with the limited automobile exception[3] to the warrant requirement in determining lawful right to access by police, the decision clearly established that the doctrine of plain view applies when police, from a lawful vantage point, witness an incriminating item used during the commission of a crime.

Applying **Horton** and **Brown** to the instant matter, there can be no dispute that the officers saw Appellant's shaving kit from a lawful vantage point and that the incriminating nature of the shaving kit was immediately apparent to them.

I begin with an examination of whether police were at a lawful vantage point when they saw the shaving kit. This Court has previously determined:

_____

[3] Our Supreme Court has now rejected Pennsylvania's limited automobile exception in favor of the full automobile exception embraced by the federal courts. **See Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) (plurality).

It is axiomatic that a search warrant is not needed when a person with the requisite authority unequivocally and specifically consents to a search. Whether an individual has voluntarily consented to a search is one of fact which must be determined in each case from the totality of the circumstances. The Commonwealth bears the burden of proving that a person consented to a warrantless search.

*Commonwealth v. Rosas*, 875 A.2d 341, 349 (Pa. Super. 2005) (citations and quotations omitted). When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search warrant based upon probable cause. *Commonwealth v. Hughes*, 836 A.2d 893, 900 (Pa. 2003).

Here, the record confirms that Ms. Smith was the lessee of the apartment at issue. N.T., 11/9/2011, at 47. Therefore, she had the requisite authority to consent to a warrantless search of the premises. Moreover, Appellant does not challenge the voluntariness of Ms. Smith's consent; she clearly executed a written consent allowing police to conduct the search. *Id.* at 34-35. Thus, when police saw the shaving kit in Ms. Smith's bedroom, they were at a lawful vantage point.

Next, we must determine if the incriminating nature of the shaving kit was immediately apparent. "In determining whether the incriminating nature of an object is immediately apparent to the police officer, we look to the totality of the circumstances." *Commonwealth v. Turner*, 982 A.2d 90, 92 (Pa. Super. 2009) (citations, quotations, and brackets omitted). "Although courts have recognized that a police officer can never be certain

that an object in plain view is incriminating, the officer's belief must be supported by probable cause." ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013) *citing* ***Commonwealth v. Ellis,*** 662 A.2d 1043, 1049 (Pa. 1995). An item can possess or display an incriminating character for purposes of the plain view doctrine even if it does not constitute contraband *per se*. ***See Brown***, 23 A.3d at 577.

In this case, the police were aware of the following facts. Appellant demanded money from the victim while brandishing a handgun protruding from a leather, shaving kit bag. Majority Opinion, at * 2. The victim witnessed Appellant take the bag into Ms. Smith's apartment complex. ***Id***. Ms. Smith executed a written consent form allowing the police to search her apartment. The consent form contained a list of the objects that the police sought to recover, including: a "handgun, black in color, ammunition/rounds, ammunition, magazines, **any other accessory such as a brown or black leather bag similar to a hygiene/shaving kit bag**." N.T., 11/9/2011, at 48 (emphasis added). Moreover, Captain Paul Jewell testified as follows at the suppression hearing:

> Q: After obtaining consent to search from M[s.] Smith, what do you do next, Captain?
>
> A: I entered the apartment.
>
> Q: And you just walk in?
>
> A: Because of the nature of the call, a gun involved, we cleared the apartment to make sure no other persons were present and there were not.

Q: And what does that entail?

A: I ended up going to the back bedroom as part of the clearing. After I cleared it, **I immediately saw a small bag, shaving bag, on the foot of the bed**.

Q: And what was it – When you observed it, what did you immediately notice?

A: **It fit the description of what the victim had told me**.

N.T., 11/9/2011, at 48 (emphasis added).

The record confirms that Appellant used the shaving kit **itself** during the commission of a crime. The victim described the shaving kit in detail to police. It was clearly one of the targets of the consensual search of Ms. Smith's apartment. Separate and apart from its contents, the shaving kit **itself** linked Appellant to a gunpoint robbery and the police were aware of this fact. The shaving kit was in the open, lying on the foot of the bed, and not obscured. Appellant did nothing to preserve a privacy expectation in the exterior of his shaving kit and the facts show that it was the incriminating outward characteristics of Appellant's shaving kit, not the incriminating nature of its contents, which were immediately apparent to the officer who lawfully entered Ms. Smith's rear bedroom. Thus, Appellant exposed his shaving kit to the plain view of outsiders, including the victim and anyone whom Ms. Smith allowed into her bedroom. For these reasons, Appellant cannot assert a reasonable expectation of privacy in his shaving kit (*i.e.*, the bag itself as opposed to its contents). It follows, then, that the seizure of

the shaving kit (as a container) cannot offend the Fourth Amendment. *See*

*Katz*, 389 U.S. at 361 (Harlan, concurring) ("objects, activities, or statements that [the defendant] exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited); *see also Horton*, 496 U.S. at 141 n.11 (suggesting that where an incriminating item in plain view is a container, police may permissibly seize it because "even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may be opened pursuant to either a search warrant or one of the well-delineated exceptions to the warrant requirement."); *see also Commonwealth v. Copenhefer*, 587 A.2d 1353, 1356 (Pa. 1991) ("A defendant's attempt to secrete evidence of a crime is not synonymous with a legally cognizable expectation of privacy. A mere hope for secrecy is not a legally protected expectation."), *abrogated on other grounds by, Commonwealth v. Rizzuto*, 777 A.2d 1069 (Pa. 2001). Based upon all of the foregoing, I believe that the police permissibly seized Appellant's shaving kit.

My analysis cannot end here. The nature of the incriminating object in this case – *i.e.* a container – coupled with the fact that the officer effectuated a search of its contents compels me to proceed to *Horton*'s third prong, which asks whether the police have a lawful right of access to the challenged evidence. As previously mentioned, *Horton* addresses the situation in which a defendant seeks suppression of the contents of a

container seized under the plain view doctrine. In relevant part, the Court stated that "even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may be opened pursuant to either a search warrant or one of the well-delineated exceptions to the warrant requirement." **Horton**, 496 U.S. at 141 n.11 (citations omitted). As this quote indicates, and as the majority has determined, Appellant retained an expectation of privacy in the contents of his shaving kit that could only be overcome if the officers obtained a warrant. Since this was not done, the search, as opposed to the seizure was constitutionally infirm.

Notwithstanding this determination, I believe that suppression is unwarranted under the present circumstances. As I have explained above, Appellant lacked an expectation of privacy in his shaving kit container. Thus, while a **search** of the **contents** of the shaving kit may have been improper, a **seizure** of the **container** was constitutionally justified. Moreover, at the moment the officer seized the container, there was ample evidence to establish probable cause[4] in support of a warrant to search the

_____

[4] "[N]o warrant to search any place or to seize any person or things shall issue without describing the item as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed by the affiant." Pa. Const. Art. I, § 8. "Probable cause [] is a practical, non-technical concept which requires consideration of the totality of the circumstances. **Commonwealth v. Galvin**, 985 A.2d 783, 796 (Pa. 2009). The issuing authority "makes a practical, common-sense determination [], including the veracity and basis of knowledge of the persons supplying hearsay
*(Footnote Continued Next Page)*

contents of the shaving kit. Given the discrete constitutional transgression that occurred in this case, I would hold that the doctrine of inevitable discovery strongly supports affirmance of the trial court's suppression order.

In describing the doctrine of inevitable discovery, the United States Supreme Court has opined, "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." ***Nix v. Williams***, 467 U.S. 431, 446 (1984). This Court has concluded:

> Pennsylvania courts recognize the inevitable discovery doctrine first described by the United States Supreme Court in ***Nix v. Williams***, 467 U.S. 431 (1984). That doctrine provides that evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct. Thus, evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual recovery was accomplished through illegal actions. Suppressing evidence in such cases, where it ultimately or inevitably would have lawfully been recovered, would reject logic, experience, and common sense.

*(Footnote Continued)* ───────────────────

information, there is a fair probability that contraband or evidence of a crime will be found in a certain locale." ***Id.***

This exception to the exclusionary rule has been invoked on numerous occasions by Pennsylvania appellate courts as a basis for admitting evidence that was, or was claimed to have been, illegally obtained by the police or other government investigators. *See, e.g., Commonwealth v. Van Winkle,* 880 A.2d 1280, 1285 (Pa. Super. 2005) (holding that evidence obtained after officer exceeded permissible scope of weapons frisk was admissible because it fell within the inevitable discovery exception); *Commonwealth v. Ingram,* [814 A.2d 264, 270 (Pa. Super. 2002)] (deeming evidence obtained as a result of involuntary confession admissible because it inevitably would have been discovered); *Commonwealth v. Miller,* 724 A.2d 895, 900 n. 5 (Pa. 1999) (*citing **Nix v. Williams,** supra,* and noting that even if the evidence found in the defendant's home had been illegally seized, it "would have been admissible because it inevitably would have been discovered"); *Commonwealth v. Albrecht,* 720 A.2d 693, 702 n. 11 (Pa. 1998) (in claim decided under federal and state constitutions, holding that even if warrantless search of defendant's home had been improper, suppression not required because the evidence inevitably would have been discovered); *Commonwealth v. Garcia,* 661 A.2d 1388 (Pa. 1995) (defendant not entitled to suppression of drugs in his pocket because they inevitably would have been discovered since police lawfully were permitted to search him incident to his arrest); *Commonwealth v. Hoffman,* [589 A.2d 737, 744 (Pa. Super. 1991)] (finding evidence recovered as a result of illegal search of defendant admissible because it would have been inevitably discovered); *Commonwealth v. Speaks,* 505 A.2d 310 (Pa. Super. 1986) (evidence regarding discovery of marijuana in defendant's residence properly admitted under inevitable discovery rule).

*Commonwealth v. Gonzalez*, 979 A.2d 879, 890-891 (Pa. Super. 2009) (some citations, all quotations, brackets, and ellipsis omitted). The *Gonzalez* Court determined that once police "had probable cause to arrest [Gonzalez] and had facts supporting issuance of a warrant to search [his]

apartment, […the police] inevitably would have discovered the other items of contraband in [Gonzalez's] room." **Id.** at 891.

The present case presents a textbook set of circumstances in which a valid conviction is set aside based upon the exclusion of evidence that inevitably would have been discovered. Under the preponderance of the evidence standard, I would conclude that the undisputed facts prove that the evidence would have been inevitably discovered by police. Here, based upon the totality of the circumstances, the police arrested Appellant and had probable cause to obtain a search warrant for Ms. Smith's apartment, but did not because Ms. Smith voluntarily gave consent. The victim told the police that Appellant robbed him and provided them a description of Appellant, the weapon used in the commission of the crime, and the container in which Appellant placed his firearm. The victim also informed the police that he witnessed Appellant go into the apartment building where Ms. Smith lived and that he observed Appellant and Ms. Smith depart from the scene. N.T., 11/9/2011, at 8-9, 13. The police detained Appellant at a Sheetz gas station. **Id.** at 21. The police then transported the victim to the Sheetz where he positively identified Appellant as the robber. **Id.** The police arrested Appellant. **Id.**

Moreover, police were in the process of obtaining a warrant to search Ms. Smith's residence, and items relating to the gunpoint robbery committed by Appellant that may have been located therein including Appellant's

shaving kit. N.T., 11/9/2011, at 35. No warrant was obtained, however, because Ms. Smith gave written permission for the officers to conduct a search. *Id.* Ms. Smith's written consent contained a list of the objects of the police search, including: a "handgun, black in color, ammunition/rounds, ammunition, magazines, any other accessory such as a brown or black leather bag similar to a hygiene/shaving kit bag." *Id.* at 48. These descriptions were based upon what the victim told police. *Id.* Thus, at the time of the search, police knew the specific items they were looking for and there was a fair probability that evidence of a crime would have been found in Ms. Smith's apartment. Had the police applied for a warrant to search the contents of Appellant's shaving kit, they had overwhelming evidence to support probable cause.[5]

Finally, I must briefly address the learned majority's reliance on *Commonwealth v. Berkheimer*, 57 A.3d 171 (Pa. Super. 2012) (*en banc*), as that case is wholly distinguishable from the instant matter. In *Berkheimer*, the search at issue was markedly different. Therein, police

_____

[5] There is no concern in this case that we are dealing with the possibility that the police "got the wrong man." The victim positively identified Appellant as his armed robber. This identification rested upon unshakable indicia of reliability: Appellant and the victim knew each other previously since the two shared a prison cell together. Furthermore, as even the majority acknowledges, Appellant admitted to possessing marijuana that he stored in the same shaving kit bag that housed the firearm which he now seeks to suppress. *See* Majority Opinion at *22, n.12.

were attempting to execute a probation detainer for a man named Ryan Lecroy.  Acting on an **unverifiable** tip, the police believed that Lecroy could be found at the Berkheimer's home.  Police instituted a search at 11:30 p.m., under the dark of night, when the occupants appeared to be asleep.  Police knocked on the door, but before anyone could answer it, pushed the door open and smelled burnt marijuana.  The police entered the residence, wherein they saw contraband and a firearm inside.  As my esteemed colleague acknowledges, the police then secured a warrant to search the residence based upon the items they observed during the illegal entry into the home.  Majority Opinion, at *18.

In **Berkheimer**, this Court determined that "the independent source rule precludes the issuance of a search warrant if the law enforcement officers premised their application for the warrant, even in part, on information they obtained during an unlawful entry of the premises to be searched."  **Berkheimer**, 57 A.3d at 184, *citing* **Murray v. United States**, 487 U.S. 533, 534-535 (1988).  We stated that "[l]aw enforcement may not act willfully to avail itself of unlawful conduct of the expectation that the more relaxed measure of inevitable discovery espoused in the Fourth Amendment jurisprudence will somehow vindicate the right to privacy enshrined in Article I, Section 8."  **Berkheimer**, 57 A.3d at 188.  As the United States Supreme Court made clear, a resulting search is infirm when "the prosecution could not demonstrate that the agents **would** have sought

a warrant had they not first entered" the property at issue. *Id.*, *citing Murray*, 487 U.S. at 543 (emphasis supplied). Ultimately, in *Berkheimer*, we determined that "the record in [that] case identifi[ed] no source whatsoever unsullied by the taint of the illegality." *Berkheimer*, 57 A.3d at 190 (original emphasis omitted). Thus, in sum, *Berkheimer* stands for the proposition that police cannot conduct an illegal search first and then use the information gained from that search to ratify their actions under the guise of inevitable discovery.

Here, based on the facts as presented to the suppression court, I have no difficulty finding that not only **could** police have obtained a search warrant, but they certainly **would** have. This is not the same situation we were confronted with in *Berkheimer*. There, police used information gleaned from the illegal entry into and search of the Berkheimer's home to procure a search warrant for wholly unrelated crimes that they were not originally investigating. In this case, unlike in *Berkheimer*, police had probable cause to believe that a firearm **would** be found at Ms. Smith's apartment at the time of the search. Moreover, as noted multiple times previously, police were in the process of applying for a search warrant based upon the victim's statements to them. It was only after Ms. Smith voluntarily consented to a search of her apartment that the police suspended the search warrant application process. Under the facts of this case, had the police applied for a search warrant, based upon the information known to

them before entering Ms. Smith's apartment, they unquestionably **would** have succeeded in obtaining a warrant to search the shaving kit they **lawfully** seized.

In sum, I believe that the facts of this case do not warrant suppression.[6] The investigating officer properly seized Appellant's shaving kit under the plain view doctrine. As of that moment, the police had ample grounds to establish probable cause for a warrant to search the contents of Appellant's shaving kit. Thus, while the warrantless search that ensued may have been constitutionally infirm, I would hold that the contents of Appellant's shaving kit would inevitably have been discovered. Hence, I would affirm the denial of suppression and affirm Appellant's judgment of sentence. Accordingly, I respectfully note my dissent.

---

[6] This Court may affirm the trial court's decision on any basis. ***Gonzalez***, 979 A.2d at 889, n.5. I admonish the Commonwealth for electing not to file a brief in this matter, despite a grant by this Court for an extension of time to do so. This difficult matter was made even more challenging without the benefit of the Commonwealth's advocacy.