John **MINICH**, Stanley L. Switzer, and Randy Kiehl

v.

The **COUNTY OF JEFFERSON; The Honorable Ira W. Sunderland, David Black** and **Donna Hoffman,** Commissioners of Jefferson County; and **Thomas A. Demko, Sheriff** of Jefferson County

**Appeal of: Thomas A. Demko, Sheriff of Jefferson County.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2007.
Decided March 14, 2007.

Thomas W. King, III and Ronald T. Elliott, Butler, for appellant.

William R. Strong, Clarion, for appellees, John Minich, Stanley L. Switzer, and Randy Kiehl.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Thomas A. Demko, Sheriff of Jefferson County, (Sheriff) appeals from the November 17, 2005, order of the Court of Common Pleas of Jefferson County (trial court), which clarified the trial court's July 9, 2004, order and entered a final decree in favor of John Minich, Stanley L. Switzer and Randy Kiehl (collectively, Plaintiffs). We reverse.

The parties stipulated to the following facts. On June 11, 2002, Jefferson County (County) enacted an ordinance providing that the Sheriff subject every person en-

tering the Jefferson County Court House to a point of entry search using metal detectors. (R.R. at 79a–80a.) As a result, the County posted a sign at the entrance to the Jefferson County Court House warning the public against carrying firearms into the building.[1] (R.R. at 81a.)

The Jefferson County Court House has a front and rear public entrance, both leading to the first floor. (R.R. at 81a.) The first floor hallway passes by the District Court, the Assessor's Office, the Tax Claim Office, the Prothonotary's Office/Clerk of Courts and the Office of the Register and Recorder/Clerk of Orphan's Court. (R.R. at 81a–82a.)

On June 16, 2002, Plaintiffs attempted to enter the Jefferson County Court House while possessing concealed handguns pursuant to valid permits. (R.R. at 80a.) Their destination in the Jefferson County Court House was the Assessor's Office on the first floor. (R.R. at 80a.) However, they refused to submit to a point of entry search, and the Sheriff denied them entry. (R.R. at 80a.)

█ Plaintiffs filed a twelve-count complaint with the trial court, seeking declaratory and injunctive relief against certain County officials. On May 19, 2004, the trial court entered a *decree nisi* declaring the County's ordinance null and void. The County officials filed post-trial motions, which the trial court denied on July 9, 2004. In denying the post-trial motions, the trial court only addressed the issue raised in counts I, II, VI and VII of the complaint. The County officials appealed to this court, which reversed the July 9, 2004, order and remanded for further proceedings in connection with the remaining counts of the complaint. *Minich v. The County of Jefferson,* 869 A.2d 1141 (Pa. Cmwlth.), *appeal denied,* 585 Pa. 700, 889 A.2d 90 (2005) (*Minich I*). On remand, however, the trial court issued an order clarifying that the trial court had intended to rule in favor of Plaintiffs on all counts of the complaint by making Plaintiffs' trial brief part of the *decree nisi.* The trial court then entered a final decree in favor of Plaintiffs on counts III, IV, V, VIII, IX, X, XI and XII of the complaint. The Sheriff now appeals to this court.[2]

## I. Unreasonable Searches and Seizures

The Sheriff argues that the trial court erred in concluding that the County ordinance violates federal and state constitutional prohibitions against unreasonable searches and seizures.[3] We agree.

---

1. Section 7 of the ordinance provides, in pertinent part, as follows:

   A. No User [i.e., no person entering a County building] shall possess a Weapon in any County building or cause a Weapon to be present in any County building.

   B. Any User in the possession of a Weapon that is in violation of this Section shall surrender such Weapon to the Jefferson County Sheriff's deputy or other security personnel charged with the duty of enforcing this Ordinance. Said Weapon shall be secured by said security person and returned to the User from whom it was obtained when the User departs the building. Any Weapon not retrieved within fifteen (15) days shall be subject to destruction or other disposition determined by the County.

(R.R. at 27a.)

2. This court's scope of review of a trial court's final decree entered in equity is whether the trial court committed an error of law or abused its discretion. *Earl Township v. Reading Broadcasting, Inc.,* 770 A.2d 794 (Pa. Cmwlth.2001), *appeal denied,* 568 Pa. 637, 793 A.2d 910 (2002).

3. In counts III and VIII, Plaintiffs assert that the County ordinance violates the prohibition against unreasonable searches and seizures set forth in the Fourth Amendment to the United States Constitution. In counts IV and IX, Plaintiffs assert that the County ordinance violates the prohibition against unreasonable searches and seizures set forth in Article I, Section 8 of the Pennsylvania Constitution.

Our supreme court has stated that, because Article I, Section 8 of the Pennsylvania Constitution requires a greater degree of scrutiny for all searches, if a search passes constitutional muster under Article I, Section 8, that search will also satisfy the reasonableness test of the Fourth Amendment. *In the Interest of F.B.*, 555 Pa. 661, 726 A.2d 361 (1999). To determine whether a search passes constitutional muster under Article I, Section 8, courts consider four factors: (1) the nature of the privacy interest; (2) the nature of the intrusion created by the search; (3) notice; and (4) the overall purpose to be achieved by the search and the immediate reasons prompting the decision to conduct the actual search. *Id.*

### A. Nature of the Privacy Interest

People who enter courthouses do not have a reasonable expectation of absolute privacy because society has a duty to protect members of the public who are required to appear in court for the administration of justice.

> [T]he judicial system commands the presence of litigants to appear in the courthouse for hearings and trials, and while a plaintiff or a petitioner voluntarily assumes his or her role, a defendant/respondent does not. The courts compel the attendance of witnesses through subpoenas, capias, or bench warrant. We issue summons for jury duty and plead with the public to participate in the jury process; we wield the power to punish those who fail to respond. Contempt of court remains a viable enforcement to those who choose to disregard a duty to appear. **If we demand that the public at large come onto the courthouse premises to participate in the administration of justice, we have a duty to ensure minimal levels of protection during their participation.** And ... [justice] cannot be blind to the reality of potential violence. We recognize that individuals accused of crimes, some heinous, are brought into the courts to attend trial. Gang-related criminal proceedings bring spectators who mingle with jurors in the halls, elevators, and cafeteria, in some instances in a threatening manner. Divorce brings out the worst in every individual; anxiety, emotion, anger, and revenge run rampant. Domestic violence is a recurring theme in criminal and family law cases.
>
> .... We decline to wait until the tragic death of a litigant, witness, juror, attorney, courthouse employee, judge, spectator, member of the press, or an individual merely in the building to transact business before we sanction the use of reasonable security measures.

*Gibson v. State*, 921 S.W.2d 747, 765 (Tex. App.1996) (emphasis added) (footnote omitted). Indeed, in Pennsylvania, the General Assembly has recognized the potential danger to persons appearing in court facilities by making the possession of firearms in court facilities a crime.[4] *See*

---

4. Plaintiffs argue that, in *In the Interest of F.B.*, our supreme court limited point of entry searches to schools. We disagree. In that case, our supreme court stated that "the constitutionality of **this search** under the Pennsylvania Constitution is limited to the *sui generis* school environment." *In the Interest of F.B.*, 555 Pa. at 674, 726 A.2d at 368 (bolding added). However, "this search" was a periodic point of entry search requiring that students empty their pockets while their backpacks and coats were searched and their bodies were scanned by a hand-held metal detector. *See id.* The point of entry search in this case requires only that members of the public walk through a metal detector, a less intrusive search. *See id.*

Moreover, Chief Justice Flaherty explained in his concurring opinion in *In the Interest of F.B.* that the school environment is unique because "students are required to be pres-

Section 913 of the Crimes Code, 18 Pa.C.S. § 913.

### B. Nature of the Intrusion

Here, all users of the courthouse must walk through a magnetometer, i.e., a metal detector. · (Trial ct.'s 5/19/2004 op. at 2.)

> [The] use of a magnetometer involves "the absolutely minimal invasion of privacy," representing "a relatively inoffensive method of conducting a search . . . less intrusive than alternative methods." Passing through a magnetometer has none of the personal indignities or humiliations of physical searches or the like. There is no detention involved nor probing of people's bodies. In short, the degree of intrusiveness is minimal at best, and much less intrusive than other equally thorough methods of preventing weapons from entering a courthouse.

*The Legal Aid Society of Orange County v. Crosson,* 784 F.Supp. 1127, 1130–31 (S.D.N.Y.1992) (citations omitted).

### C. Notice

Plaintiffs have stipulated that the County has posted signs at the entrance to the Jefferson County Court House warning the public against carrying firearms into the building. Moreover, section 913 of the Crimes Code gives notice that it is a crime to possess a firearm in a court facility, and, thus, persons legally carrying firearms must check them at the entrance to a county building that contains a court facility. *See* section 913(e) of the Crimes Code, 18 Pa.C.S. § 913(e) (stating that counties must provide lockers so that persons legally carrying weapons may check them upon

entrance to a building containing a court facility). Finally, the County ordinance gives notice that weapons must be surrendered upon entry to a courthouse and that weapons will be returned upon departure from the courthouse.

### D. Purpose

As indicated above, the purpose of the point of entry search is to protect people using the courthouse from individuals who would use weapons to harm them. Courts have taken judicial notice of increasing threats of violent acts directed at courthouses. *See McMorris v. Alioto,* 567 F.2d 897 (9th Cir.1978); *see also State v. Plante,* 134 N.H. 585, 594 A.2d 165 (1991). Moreover, in *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), U.S. Supreme Court Justice Ginsburg indicated that point of entry searches at the entrances to courts and other official buildings are reasonable because the risk to public safety is **substantial and real.**

Considering the four factors, we conclude that the County ordinance does not violate the prohibition against unreasonable searches and seizures set forth in the state and federal constitutions.

### II. Article I, Section 21

■ The Sheriff argues that the trial court erred in concluding that the County ordinance violates Article I, Section 21 of the Pennsylvania Constitution, which protects the "right of the citizens to bear arms in defence of themselves . . . . " [5] Pa. Const., art. I, § 21. We agree.

---

ent. . . . " *Id.* at 674, 726 A.2d at 368 (Flaherty, C.J., concurring). As indicated above, certain members of the public are required to be present in courthouses for the administration of justice. Thus, we are not persuaded by Plaintiffs' reliance upon *In the Interest of F.B.*

for the exclusion of point of entry searches outside the school context.

**5.** Plaintiffs assert that the County ordinance violates Article I, Section 21 of the Pennsylvania Constitution in counts V and X of the complaint.

The right to bear arms, although a constitutional right, is not unlimited, and it may be restricted in the exercise of the police power for the good order of society and the protection of the citizens. *Gardner v. Jenkins,* 116 Pa.Cmwlth. 107, 541 A.2d 406, *appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988). Here, the County has limited the right to bear arms for the protection of citizens using the courthouse. Thus, the County's ordinance does not violate Article I, Section 21 of the Pennsylvania Constitution.

### III. County Authority

 Finally, the Sheriff argues that the trial court erred in concluding that the County lacked statutory authority to enact the ordinance.[6] We agree.

Section 509(a) of the County Code[7] allows county commissioners to adopt ordinances regulating the affairs of a county. Section 509(c) of the County Code allows county commissioners to prescribe fines and penalties for violations of a "public safety" ordinance. 16 P.S. § 509(c). Here, the County ordinance regulates the affairs of the County, specifically the safety of members of the public who enter the Jefferson County Court House.

Moreover, section 913(e) of the Crimes Code requires that each county make lockers available at a building containing a court facility for the temporary checking of firearms by persons legally carrying the firearms. 18 Pa.C.S. § 913(e). The County ordinance simply implements this provision.

Accordingly, we reverse the trial court's determination with respect to counts III, IV, V, VIII, IX, X, XI and XII of the complaint.

---

6. Plaintiffs assert that the County lacked statutory authority to enact the ordinance in counts XI and XII of the complaint.

### ORDER

AND NOW, this 14th day of March, 2007, the order of the Court of Common Pleas of Jefferson County, dated November 17, 2005, is hereby reversed.

---

7. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 509(a).