J-S64032-14

2014 PA Super 245

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM ANTHONY GILLESPIE | |
| Appellant | No. 596 WDA 2014 |

Appeal from the Judgment of Sentence April 2, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001030-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

OPINION BY GANTMAN, P.J.:                    **FILED OCTOBER 27, 2014**

Appellant, William Anthony Gillespie, appeals from the judgment of sentence entered in the Erie County Court of Common Pleas, following his jury trial convictions for possession with intent to deliver ("PWID"), simple possession, and possession of drug paraphernalia.[1]  We affirm.

The trial court set forth the relevant facts of this case as follows:

> The Sheriff of Erie County is charged with the responsibility of providing security for the [Erie County] Courthouse.  A single point of entry for the public was created to provide for the screening of all members of the community entering this public facility.

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), respectively.

An Administrative Order was entered by this [c]ourt…on April 15, 2003. The Administrative Order provided the Sheriff's Department with authority to conduct reasonable searches of persons and property entering the Courthouse for the purpose of preventing any potential weapon from entering the building. The use of searches by a metal detector was authorized as well as a pat down search of any person activating a signal from the metal detector. As part of this process, administrative authority was given to search "[a]ll packages, briefcases and other containers in the immediate possession of persons entering [the] Courthouse property…." [(**See** Omnibus Pretrial Motion for Relief, filed 8/21/13, at Exhibit A).]

The Sheriff's Department has deputies posted at the single point of entry for the public. As a person enters the Courthouse through this entrance, there are two possible lanes to proceed through a metal detector. On either lane, the person is asked to remove any loose item(s) of personal property and place them in a plastic bin which is viewed by a Deputy Sheriff. The person then proceeds through a metal detector.

All persons entering the Courthouse, regardless of age, gender or race, are required to go through this process. Such were the circumstances on March 27, 2013[,] when [Appellant] entered the Courthouse. Like any other member of the public, [Appellant] was required to place any loose items of personal property in the plastic bin to be viewed by a Deputy Sheriff. [Appellant] was then required to proceed through a metal detector. Among the items [Appellant] placed in the plastic bin was a white plastic bottle bearing a label for Anacin.

Upon observing the plastic bottle [Appellant] placed in the bin, Deputy Sheriff Stephen Welch shook the bottle "and it didn't rattle or anything like a normal bottle would. … [T]here was something in there, but it didn't have—like a normal rattle of just loose pills inside of a hard plastic container. You could feel it. There was something in there, but it was kind of like padded." [(N.T. Preliminary Hearing, 4/8/13, at 6).] Deputy Welch opened [Appellant's] bottle and observed what appeared to be packages of crack cocaine. The Deputy asked [Appellant]

for identification and [Appellant] indicated that he did not have identification with him.

Deputy Welch retained possession of the bottle. It appeared to Deputy Welch that [Appellant] then headed to Central Court where preliminary hearings are held in criminal cases. At no time was [Appellant] detained by Deputy Welch.... Instead, Deputy Welch notified his supervisor, Corporal Bowers, of the situation.

A short time later, Corporal Bowers discussed the matter with Jon Reddinger, an Erie County Detective with the District Attorney's Office. Detective Reddinger field-tested one of the baggies in [Appellant's] bottle and determined that it was positive for cocaine.

(Trial Court Opinion, filed September 13, 2013, at 1-4) (footnote and some internal citations to the record omitted).

The Commonwealth charged Appellant with PWID, simple possession, and possession of drug paraphernalia. On August 21, 2013, Appellant filed an omnibus pretrial motion, which included a motion to suppress the contraband found in Appellant's pill bottle. Following a hearing, the court denied Appellant's motion to suppress on September 13, 2013. The case proceeded to trial, and a jury convicted Appellant of all counts on January 24, 2014. On April 2, 2014, the court sentenced Appellant to a term of three (3) to twenty-three (23) months' incarceration for the PWID conviction. For the conviction of possession of drug paraphernalia, Appellant was ordered to pay a $100.00 fine. The conviction for simple possession merged with PWID for sentencing. On April 8, 2014, Appellant filed a timely notice of appeal. The court ordered Appellant to file a concise statement of

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises a single issue for our review:

DID THE TRIAL COURT ERR IN FAILING TO GRANT [APPELLANT'S] MOTION TO SUPPRESS THE EVIDENCE FOUND IN THIS CASE IN THAT THE ERIE COUNTY SHERIFF'S DEPARTMENT VIOLATED [APPELLANT'S] RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES?

(Appellant's Brief at 2).

Appellant argues the purpose of the Erie County Courthouse policy regarding searches is to prevent people from bringing firearms and other dangerous weapons into the facility. Appellant asserts he had no notice he would be searched for contraband, and the signs at the entrance to the courthouse were changed **after** the incident to inform visitors they could be searched for this purpose. Appellant concedes the government "has a great interest in keeping the public and courthouse employees safe." (Appellant's Brief at 6). Nevertheless, Appellant contends there was nothing unusual about the Anacin bottle. Appellant avers Deputy Welch did not testify that he believed the bottle was a weapon. Appellant concludes the deputy's removal of the Anacin bottle from the bin and subsequent examination of its contents amounted to an unconstitutional search, and the court improperly denied the motion to suppress. We disagree.

We review the denial of a suppression motion as follows:

Our standard of review in addressing a challenge to a trial

court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams, H.*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).  Further, "It is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony."  *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

"Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures."  *Commonwealth v. McCree*, 592 Pa. 238, 246, 924 A.2d 621, 626 (2007) (internal footnotes omitted).  "Not every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures."  *Commonwealth v. Taylor*, 565 Pa. 140, 149, 771 A.2d 1261, 1266 (2001), *cert. denied*, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 380 (2001).  "While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and [the Pennsylvania Supreme

Court] have recognized exceptions to the warrant requirement." *Id.*

> The reasonableness of a seizure that is less intrusive than a traditional arrest depends upon a three-pronged balancing test derived from **Brown v. Texas**, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), in which the reviewing Court weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." **Id.** at 50, 99 S.Ct. at 2640[, 61 L.Ed.2d at ___]. To be deemed reasonable under this standard, such a seizure must ordinarily be supported by reasonable suspicion, based upon objective facts, that the individual is involved in criminal activity. The existence of individual suspicion, however, is not an "irreducible" component of reasonableness in every circumstance. Rather, where regimes of suspicionless searches or seizures are designed to serve governmental "special needs" that exceed the normal demands of law enforcement, they will be upheld in certain instances.

*Commonwealth v. Beaman*, 583 Pa. 636, 642-43, 880 A.2d 578, 582 (2005) (some internal citations omitted). *See Chandler v. Miller*, 520 U.S. 305, 323, 117 S.Ct. 1295, 1305, 137 L.Ed.2d 513, ___ (1997) (stating "where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable'—for example, searches now routine at airports and at entrances to courts and other official buildings"); *U.S. v. Hartwell*, 436 F.3d 174, 179-81 (3d Cir. 2006), *cert. denied*, 549 U.S. 945, 127 S.Ct. 111, 166 L.Ed.2d 255 (2006) (holding warrantless search of passenger at airport checkpoint was justified under administrative search doctrine and passed **Brown** test, where search procedures involved were minimally intrusive and "well-tailored to protect personal privacy, escalating in invasiveness only after a lower level of

screening disclosed a reason to conduct a more probing search"; purpose of search—prevention of highjackings and terrorist attacks—advanced public interest; "[s]ince every air passenger is subjected to a search, there is virtually no stigma attached to being subjected to search at a known, designated airport search point"; "the possibility for abuse is minimized by the public nature of the search"; and passengers were on notice that they would be searched); *Minich v. County of Jefferson*, 919 A.2d 356, 359-60 (Pa.Cmwlth. 2007), *appeal denied*, 594 Pa. 682, 932 A.2d 1290 (2007) (holding county ordinance providing that sheriff subject every person entering county courthouse to point-of-entry search did not violate federal and state constitutional prohibitions against unreasonable searches and seizures, where "[p]eople who enter courthouses do not have a reasonable expectation of absolute privacy because society has a duty to protect members of the public who are required to appear in court for the administration of justice"; use of metal detector was minimal intrusion; signs at entrance to courthouse provided notice that weapons could not be carried in building). *See also Commonwealth v. Vecchione*, 476 A.2d 403, 408-10 (Pa.Super. 1984) (holding airport security screening procedures satisfied Fourth Amendment requirement of reasonableness, where screening searches, which included x-ray scans of luggage, were "carefully circumscribed, in purpose and intrusiveness, in accordance with the need for the search, *i.e.*, to prevent and deter the carriage aboard airplanes of

weapons and explosives"; procedures constituted "an administrative search initiated with the consent of the passenger"; and "purpose of the search is not to gather evidence for a criminal investigation, but it is conducted as part of a general regulatory scheme in furtherance of an administrative purpose").

Instantly, the Erie County Courthouse had a single point of entry where all visitors were screened as a security measure, pursuant to an administrative order entered by the President Judge of the Erie County Court of Common Pleas. The order authorized the Sheriff's Department to conduct reasonable searches, of persons and property entering the courthouse, to enforce 18 Pa.C.S.A. § 913 which prohibits the possession of firearms or other dangerous weapons in a court facility. The order defined "weapon" to include "any knife, an explosive or incendiary device (whether real or hoax) or any object that is designed[,] made or adapted for the purpose of inflicting bodily injury and any 'weapon' defined as such by the Pennsylvania Crimes Code." (**See** Omnibus Pretrial Motion for Relief, filed 8/21/13, at Exhibit A). The order also stated: "All packages, briefcases and other containers in the immediate possession of persons entering the Courthouse property shall be subject to inspection." **See id.** As Appellant admits, the government has a substantial interest in preventing people from bringing weapons into court facilities. The court's administrative order furthered this interest by authorizing the search of all visitors for weapons of any kind.

This authorization included inspection of any containers in the possession of a person entering the courthouse. If security officials were unable to inspect containers, which might conceal weapons or other items capable of causing injury, then the purpose of the search policy would be defeated.[2] When Appellant entered the courthouse, he was required to place any loose items of personal property in a plastic bin for inspection by a deputy sheriff. Among the items Appellant placed in the bin was a plastic bottle labeled Anacin. Deputy Welch shook the bottle and noticed it did not rattle as a normal bottle of pills would rattle, leading him to believe there was something else inside the bottle. Deputy Welch then opened the bottle and observed what appeared to be packages of crack cocaine inside. The search of Appellant and his property was consistent with the terms and purpose of the administrative order.

Additionally, the intrusiveness of the search was minimal. Appellant voluntarily brought an Anacin bottle into a public facility where all members of the public were subject to a routine search. Appellant did not have a reasonable expectation of absolute privacy in the courthouse. *See Minich, supra*. Initially, the deputy sheriff merely shook the bottle. He opened the

---

[2] At the suppression hearing, Erie County Sheriff Bob Merski testified that courthouse security involves intercepting not only traditional weapons such as guns and knives, but also explosives and chemical substances that may cause physical harm and can be concealed in a container as small as a pill bottle. Sheriff Merski testified regarding three incidents in which the courthouse was shut down because of chemical weapons threats.

bottle and examined its contents only after he shook the bottle, which strongly suggested the bottle contained something other than Anacin pills. The bottle could have contained a small weapon or substance used to inflict harm on others. The search was no more intrusive than necessary to ensure public safety in the courthouse. **See Hartwell, supra**. The search also was not performed as part of a criminal investigation. After finding the contraband, Deputy Welch kept the bottle but did not detain Appellant. Appellant was free to proceed past the security area into the building.

Moreover, Appellant was on notice he would be searched. A sign posted at the courthouse entrance informed visitors they must pass through a metal detector, they may be searched, and, "Any item that has the potential to cause harm will be confiscated." (**See** Omnibus Pretrial Motion for Relief at Exhibit E). Despite this warning, Appellant decided to enter the courthouse and placed the Anacin bottle in the bin for inspection.

Based on the foregoing, we conclude the inspection of Appellant's bottle constituted a reasonable search conducted in furtherance of the legitimate administrative purpose of ensuring public safety in a courthouse. **See Vecchione, supra**. **See also Chandler, supra**; **Hartwell, supra**; **Minich, supra**. Thus, the court properly denied Appellant's motion to suppress. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Lazarus joins this opinion.

President Judge Emeritus Bender concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2014