J-S15038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRELL DARNELL SMITH | |
| Appellant | No. 1207 MDA 2014 |

Appeal from the Judgment of Sentence June 17, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005207-2013

BEFORE: LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                     **FILED APRIL 14, 2015**

Appellant Terrell Darnell Smith appeals from the judgment of sentence entered in the York County Court of Common Pleas following his jury trial convictions for driving under the influence ("DUI") of a controlled substance, Schedule I, and DUI of a controlled substance, Schedule I or II metabolite.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On June 26, 2013, at approximately 2:19 a.m., Trooper Jonathan Confer activated the lights in his police car to pull over a vehicle driving on Interstate 83. N.T., 11/8/13, at 4-6. Appellant, who was driving a blue Mazda Protege on Interstate 83 in front of the targeted vehicle, believed the

---

[1] 75 Pa.C.S. § 3802(d)(1)(i) and (iii), respectively.

trooper had activated his lights to initiate a stop of his vehicle. N.T., 5/15/14, at 137-38. Both vehicles pulled over to the side of the road. N.T., 11/8/13, at 6. The targeted vehicle parked directly in front of the police vehicle, and Appellant's vehicle parked about nine or ten car lengths in front of the targeted vehicle. *Id.* at 14. After Trooper Confer and his partner approached the targeted vehicle, Trooper Confer left his partner with the targeted vehicle and approached Appellant's vehicle to determine why Appellant pulled his vehicle to the side of the road. *Id.* at 6. Trooper Confer observed Appellant's bloodshot and glassy eyes and noticed a strong odor of alcohol emanating from Appellant. *Id.* at 7. Appellant admitted to drinking alcohol and smoking marijuana earlier that evening, and Trooper Confer conducted field sobriety tests. *Id.* at 8. Trooper Confer then arrested Appellant for DUI. *Id.* at 13. A subsequent blood test revealed the presence of marijuana and a small amount of alcohol in Appellant's blood.[2] N.T., 5/15/14, at 122, 125.

On November 4, 2013, Appellant filed a pre-trial motion to suppress evidence. The court conducted a suppression hearing on November 8, 2013 and denied Appellant's suppression motion.

---

[2] Specifically, Appellant's blood alcohol level was .024, and there were Delta-9 THC of 3.9 nanograms per milliliter and Delta-9 Carboxy THC of 85 nanograms per milliliter in his blood, which indicated the presence of marijuana. N.T., 5/15/14, at 122, 125.

On May 16, 2014, a jury found Appellant guilty of DUI controlled substance, Schedule I (Count 3), and DUI controlled substance, Schedule I or II metabolite (Count 4).[3]  On June 17, 2014, the court sentenced Appellant to 90 days to 5 years' incarceration and a fine of $1,500.00 on Count 3.  The court imposed no further sentence on Count 4.  On July 18, 2014, Appellant filed a notice of appeal.[4]

On July 28, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on August 15, 2014.

Appellant raises the following issues for our review:

> WHETHER THE TROOPER SUBJECTED APPELLANT TO AN UNLAWFUL INVESTIGATORY DETENTION UNDER THE 4TH AMENDMENT AND ARTICLE I, SECTION 8 BECAUSE THE TROOPER LACKED REASONABLE SUSPICION OR PROBABLE CAUSE TO CONDUCT A TRAFFIC STOP ON APPELLANT'S VEHICLE?
>
> WHETHER THE SUPPRESSION COURT ERRED IN FINDING THAT APPELLANT WAS NOT REQUIRED TO PULL OVER AFTER THE TROOPER ACTIVATED HIS EMERGENCY LIGHTS BECAUSE APPELLANT'S BELIEF THAT THE TROOPER

---

[3] The jury acquitted Appellant of Counts 1 (DUI: general impairment/ incapable of safe driving, 75 Pa.C.S. § 3802(a)(1)), 2 (careless driving, 75 Pa.C.S. § 3714(a)) and 5 (DUI: controlled substance – combination, 75 Pa.C.S. § 3802(d)(3)).

[4] Along with his notice of appeal, Appellant filed a petition to file a notice of appeal *nunc pro tunc* because he failed to file his appeal within 30 days of sentence.  The court granted Appellant's petition.  Thus, we have jurisdiction to decide this appeal.

SUBJECTED HIM TO A SEIZURE WAS REASONABLE UNDER THE 4TH AMENDMENT AND ARTICLE I, SECTION 8?

Appellant's Brief at 4.

For ease of disposition, we will address Appellant's claims together. Appellant argues that the police officers did not have probable cause or reasonable suspicion to stop Appellant. Appellant claims that when he saw the flashing lights, he thought he was subject to a traffic stop, and that this belief was reasonable. He claims that the stop was an illegal investigatory detention that entitles him to suppression of evidence. We disagree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Gillespie*, 103 A.3d 115, 118 (Pa.Super.2014) (quoting *Commonwealth v. Williams*, 941 A.2d 14, 26–27 (Pa.Super.2008) (*en banc* )).

> Where…the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the

conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa.2010), *cert. denied,* 131 S.Ct. 110, 178 L.Ed.2d 32 (2010) (internal citations and quotation marks omitted).

There are three types of interactions between police officers and citizens. ***Commonwealth v. Stevenson***, 832 A.2d 1123, 1126-27, (Pa.Super.2003). "Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." ***Id.***

> Such interaction may be classified as a "mere encounter," an "investigative detention," or a "custodial detention." A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.
>
> "The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the Federal Constitution."

- 5 -

> *Commonwealth v. Jackson*, 698 A.2d 571, 573 (Pa.1997). However, "[i]n determining whether reasonable suspicion exists for a *Terry*[5] stop, the inquiry is the same under either Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution." *Commonwealth v. McClease*, 750 A.2d 320, 324 (Pa.Super.2000).
>
> To determine if an interaction rises to the level of an investigative detention, *i.e.,* a *Terry* stop, the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders. *Commonwealth v. Sierra*, 723 A.2d 644, 646 ([Pa.]1999). An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Melendez*, 676 A.2d 226, 229 ([Pa.]1996). To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. *Sierra, supra* at 176, 723 A.2d at 647. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate. *See Commonwealth v. Zhahir*, 751 A.2d 1153 (Pa.2000).

*Commonwealth v. Stevenson*, 832 A.2d 1123, 1127-29 (Pa.Super.2003).

The remedy for illegal seizures and searches "is exclusion of the fruits of the illegal police conduct—under both the Fourth Amendment and under Article I Section 8. That general rule of exclusion, of course, is subject to numerous exceptions." *Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa.2014). The exclusionary rule was created to "deter deliberate, reckless,

---

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 193 (internal citations omitted).

The suppression hearing testimony revealed that Trooper Confer engaged his emergency lights to pull over the vehicle driving directly behind Appellant, and that the Trooper did not intend to stop Appellant. However, Appellant also pulled over his vehicle, mistakenly believing that Trooper Confer intended to stop him. When Trooper Confer approached Appellant's vehicle to ascertain why Appellant stopped, Appellant's bloodshot eyes and odor of alcohol made his intoxication immediately apparent. Appellant then admitted to drinking alcohol and smoking marijuana earlier that evening.

Based on this evidence, the trial court correctly determined that the incident began as a mere encounter which transformed into a custodial detention after the Trooper observed Appellant's intoxication:

> We note that, if anything, we'd call this an inadvertent stop. The police didn't actually stop [Appellant]. [Appellant] stopped voluntarily. So there's nothing wrong with the stop.
>
> I guess it's defense counsel's argument that the troopers didn't have the right to even approach the vehicle, which we don't believe is correct, and we don't believe it was an investigative detention.
>
> Accordingly, we don't believe the troopers did anything but have a mere encounter with [Appellant] which then gave them probable cause to believe that [Appellant] was under the influence.
>
> And based on the trooper's testimony surrounding the field sobriety tests, we believe that the arrest was proper. So we'll deny the motion to suppress.

N.T., 11/8/13, at 28-29.

The trial court's factual findings are supported by the record, and its legal conclusions are correct. **See Gillespie, supra.** We see no error in the trial court's decision to deny Appellant's suppression motion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Wecht joins in the memorandum.

Judge Lazarus files a concurring statement in which Judge Wecht and Judge Jenkins join.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/14/2015</u>