J-S19039-24

2024 PA Super 254

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOHN F. MEAD JR. :
:
Appellant : No. 1192 MDA 2023

Appeal from the Judgment of Sentence Entered August 17, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004084-2022

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED: NOVEMBER 1, 2024**

Appellant, John F. Mead Jr., appeals from the judgment of sentence of 6 to 12 months' incarceration imposed on him by the Court of Common Pleas of York County following a jury trial at which he was convicted of terroristic threats, simple assault by physical menace, reckless endangerment, and carrying a firearm without a license.[1]  For the reasons set forth below, we affirm.

This case arises out of a July 5, 2022 road rage incident on Loucks Mill Road in York County, Pennsylvania, in which Appellant threatened another motorist (Victim) with an AR-style assault rifle.  Appellant was charged with the above offenses, and a jury trial was held on June 26 and 27, 2023.  At

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2706(a)(1), 2701(a)(3), 2705, and 6106(a)(1), respectively.

Appellant's trial, three witnesses testified for the Commonwealth: a truck driver who witnessed the incident, Victim, and a police officer who responded to the scene. Appellant did not testify and called no witnesses.

The truck driver testified that on July 5, 2022, he was stopped in traffic waiting to make a turn and that when Victim began to go around him in the other lane, Appellant, who was traveling in the opposite direction, sped up, stopped in front of Victim's car, which was behind his trailer but partially visible from his cab, and began yelling at Victim. N.T. Trial at 73-76, 83-84. The truck driver testified that he heard Appellant say to Victim "I can make you move" and saw Appellant then go back to his car, open the back, and pull out a rifle. *Id.* at 76-79, 84-85. He testified that Appellant walked back to Victim's car with the rifle, held the rifle above his head, and repeatedly yelled at Victim "this is how I'm going to make you move." *Id.* at 79. The truck driver testified that he called 911, that while he was on the phone, Appellant walked backed to his car and put the rifle back in the car, and that Victim was crying and saying that she was going to call 911. *Id.* The truck driver testified that he made his turn and left the scene after calling 911, that Victim and Appellant were still there arguing when he left, and that when he returned 10 minutes later after delivering his trailer, he saw Appellant pulled over off the road near the scene and saw a police officer arrive at the scene. *Id.* at 79-80, 89-90.

Victim testified that she was driving down on Loucks Mill Road on July 5, 2022, that she came upon trucks stopped in front of her, and that after waiting and seeing other cars behind her go around, she began to go around the truck in front of her. N.T. Trial at 93-94. She testified that when she began to pull around the truck, a car traveling the opposite direction sped up towards her, that she tried to pull out of the way, stopped and put on her flashers, and that the approaching car did not stop until it was right in front of her front bumper. *Id.* at 94-97. Victim testified that Appellant got out of the other car right after it stopped, yelling "go back bitch" and yelling at her that if she did not back up immediately, he was going to "blow your f---ing brains out." *Id.* at 98. Victim testified that Appellant then opened the back of his car, pulled out a rifle, and pointed it at her while continuing to yell that he was going to blow her brains out. *Id.* at 98-105. She testified that she called 911, that Appellant put the rifle back in his car while she was calling 911, and that she drove away when the truck in front of her moved because she was in fear for her life. *Id.* at 98-101, 104-06.

The police officer testified that three 911 calls were received concerning the incident, one from Victim, one from the truck driver, and one from Appellant and that when he arrived at the scene, Appellant was there in his car. N.T. Trial at 118-19. The officer testified that Appellant initially denied that he had pulled a gun and denied that he had a gun in the car and that Appellant told him that he, the officer, could check the car. *Id.* at 119-22.

The officer testified that after Appellant agreed that he could search the car, the officer opened the back of the car and found an AR rifle in plain view. *Id.* at 124. He testified that he and the other officer who was with him asked Appellant whether there were any other weapons in the car, that Appellant told them that there might be one in a compartment in the back of the car, and that when the officer opened the compartment, he found a magazine for the AR rifle with ammunition in it and a loaded Glock pistol with a four to five inch barrel. *Id.* at 127-28, 133-34. The officer testified that he ran a computer search that disclosed that Appellant did not have a concealed carry permit, that Appellant claimed that he did have a permit but that it was not with him, and that because Appellant claimed to have a license, the officer returned the Glock to Appellant after separating it from its ammunition. *Id.* at 128-30. The officer testified that after finding the guns, he again asked Appellant if he had pulled out the rifle and that Appellant admitted that he did and that his intent was "just to intimidate." *Id.* at 129-30, 132. The Commonwealth also introduced a stipulation that the AR-style rifle in Appellant's car was confiscated from Appellant and was test fired and found to operate properly and a state police certification that Appellant did not have a valid license to carry firearms or a sportsman's firearms permit. *Id.* at 130-31, 139-40, 142; Commonwealth Exs. 6, 7.

On June 27, 2023, the jury convicted Appellant of all charges. N.T. Trial at 200-01. Prior to sentencing, Appellant filed a post-trial motion seeking

dismissal of the charge of carrying a firearm without a license on the ground that requiring a license to carry a firearm violated his federal Second Amendment constitutional rights under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and violated Article I, Section 21 of the Pennsylvania Constitution. On August 7, 2023, the trial court denied that motion and sentenced Appellant to an aggregate term of imprisonment of 6 to 12 months' incarceration, consisting of concurrent terms of 6 to 12 months for each of the four offenses. N.T. Sentencing at 2, 18-19. Appellant filed a post-sentence motion seeking a new trial on weight of the evidence grounds and a motion to amend the sentencing order to give Appellant credit for 17 days of time served prior to his sentencing. On August 17, 2023, the trial court denied Appellant's post-sentence motion for a new trial and granted his motion for modification of sentence, ordering that the sentencing order be amended to reflect 17 days of credit. This timely appeal followed.

Appellant raises the following four issues in this appeal:

I. Whether the jury verdict as to simple assault, terroristic threats and recklessly endangering another person was against the greater weight of the evidence in that the evidence did not establish beyond a reasonable doubt that the Appellant made threats toward the victim, did not engage in conduct which could have placed the victim in fear of imminent bodily or serious bodily injury, or engaged in reckless conduct which endangered the victim or others.

II. Whether the jury verdict as to firearms not to be carried without a license was against the greater weight of the evidence in that the Commonwealth's evidence did not establish beyond a reasonable doubt that the Glock 30 .45 caliber pistol was

functional/operational as required to convict the Appellant of 18 PA. C. S. A. Section 6106.

III. Whether the evidence was sufficient to support the jury verdict as to firearms not to be carried without a license in that the Commonwealth did not produce sufficient evidence that the Glock 30 .45 caliber pistol was functional/operational as required to convict the Appellant of 18 PA. C. S. A. Section 6106.

IV. Whether the honorable trial court erred in denying the Appellant's post trial motion to dismiss the charge of firearms not to be carried without a license, 18 PA. C. S. A. Section 6106 pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant's argument on his first issue is that the verdict on the terroristic threats, simple assault by physical menace, and reckless endangerment charges was against the weight of the evidence because only Victim's testimony was sufficient to prove these offenses, the testimony of Victim and the truck driver conflicted, and the truck driver, as a disinterested witness, was more credible. This argument is without merit.

A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. *Commonwealth v. Clemons*, 200 A.3d 441, 463 (Pa. 2019); *Commonwealth v. James*, 268 A.3d 461, 468 (Pa. Super. 2021). Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against

the weight of the evidence. ***Clemons***, 200 A.3d at 463-64; ***Commonwealth***

***v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 758 (Pa. Super. 2014) (quoting

***Commonwealth v. Clay***, 64 A.3d 1049 (Pa. 2013)) (brackets omitted).

The trial court found that the verdict did not shock its sense of justice because Victim's and the truck driver's testimony were largely consistent and the differences concerning whether the AR rifle was pointed at Victim and what Appellant yelled were due to Victim's greater ability to observe the encounter. Trial Court Opinion at 2-3. That was not an abuse of discretion. ***Commonwealth v. Johnson***, 192 A.3d 1149, 1153 (Pa. Super. 2018) (minor differences between testimony of Commonwealth witnesses did not make verdict against the weight of the evidence); ***Commonwealth v. Manchas***, 633 A.2d 618, 624-25 (Pa. Super. 1993) (inconsistencies between Commonwealth witnesses' testimony did not make verdict against the weight of the evidence).[2] Appellant is therefore not entitled to relief on this challenge to the weight of the evidence.

_____

[2] Indeed, Appellant's premise that he could not be found guilty of any of these offenses without Victim's testimony is without merit. The truck driver testified
*(Footnote Continued Next Page)*

Appellant's second and third issues both assert the same claim, that the evidence was insufficient to support his conviction for carrying a firearm without a license because the Commonwealth allegedly did not prove that the firearm on which this charge was based, the Glock pistol,[3] was operable. While Appellant frames the first of these issues as a claim that the verdict was against the weight of the evidence, the only argument that he asserts is that the evidence at trial was allegedly insufficient to prove the elements of this offense. That argument is in fact a challenge to the sufficiency of the evidence, not the weight of the evidence. *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003).

> The distinction between a claim challenging the sufficiency of evidence and a claim challenging the weight of evidence is critical. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but claims that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to

---

that Appellant brandished an AR rifle and yelled at Victim that he was going to use it to make her move, and Appellant admitted to the police that he pulled the rifle out to intimidate Victim. N.T. Trial at 76-79, 84-85, 129-30, 132. That evidence was by itself sufficient to prove both terroristic threats and simple assault by physical menace. *See Commonwealth v. Little*, 614 A.2d 1146, 1147-48 & n.2, 1151-55 (Pa. Super. 1992) (approaching a person while brandishing a firearm and angrily shouting is sufficient to prove an intentional threat to cause serious bodily injury even if the defendant does not point the firearm at the victim or verbally state an intent to shoot the victim).

[3] Appellant was not charged with carrying a firearm without a license for the AR rifle. As is discussed below, the offense of carrying of a firearm without a license applies only to guns with barrel lengths below certain limits or overall lengths of less than 26 inches, 18 Pa.C.S. § 6102, and the AR rifle presumably exceeded those size limitations.

deny justice." A claim challenging the sufficiency of the evidence, however, asserts that there is insufficient evidence to support at least one material element of the crime for which [the defendant] has been convicted.

*Id.* (quoting **Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000)) (citations omitted). Appellant's second issue therefore is identical to his third issue, and we accordingly address both of these issues as a single challenge to the sufficiency of the evidence. **Lyons**, 833 A.2d at 258 (addressing defendant's claim that verdict was against the weight of the evidence as a challenge to the sufficiency of the evidence where defendant's argument was that there was insufficient evidence to prove the elements of the offense); **Commonwealth v. Frederick**, 475 A.2d 754, 760-61 & n.3 (Pa. Super. 1984) (same).

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Antidormi*, 84 A.3d at 756 (quoting *Commonwealth v. Estepp*, 17 A.3d 939 (Pa. Super. 2011)).

To prove the offense of carrying a firearm without a license, the Commonwealth must show that the defendant intentionally, knowingly, or recklessly carried a firearm in a vehicle or concealed on or about his person outside his home or place of business without a valid and lawfully issued license. 18 Pa.C.S. § 6106(a)(1); *Johnson*, 192 A.3d at 1155. To constitute a firearm for which a license to carry is required, the firearm must be "[a] pistol or revolver with a barrel length less than 15 inches, [a] shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or [a] pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S. § 6102. The Commonwealth proved all of these elements, as it showed that Appellant carried a Glock pistol that he owned in a compartment in his car, that the Glock pistol had a barrel length of less than 15 inches, and that he had no license to carry a firearm.

Appellant does not dispute that the Commonwealth proved those elements but contends that the Commonwealth was also required to prove that the Glock pistol was operable and that it failed to do so. Appellant is correct that an inoperable gun that is not readily capable of being made operable does not constitute a firearm to which the offense of carrying a firearm without a license applies. *Commonwealth v. Layton*, 307 A.2d 843, 844-45 (Pa. 1973); *Commonwealth v. Gainer*, 7 A.3d 291, 297-98 (Pa.

Super. 2010); *Commonwealth v. Berta*, 514 A.2d 921, 924-25 (Pa. Super. 1986). That, however, does not make the Commonwealth's evidence in this case insufficient.

Contrary to Appellant's assertion, the Commonwealth is not required to prove that the gun that the defendant possessed was operable unless evidence has been introduced that the gun was inoperable. *Commonwealth v. Horshaw*, 346 A.2d 340, 342 (Pa. Super. 1975); *Commonwealth v. Santana*, No. 2539 EDA 2022, slip op. at 9-10 (Pa. Super. filed December 5, 2023) (unpublished memorandum); *Commonwealth v. Grabowski*, No. 539 EDA 2022, slip op. at 11 (Pa. Super. filed December 22, 2022) (unpublished memorandum). Thus, proof of the elements of carrying a firearm without a license is sufficient where the only evidence concerning the gun is that a victim saw the defendant point a gun at him or her and no evidence is introduced of the gun's operability or inoperability or of any examination or testing of the gun. *Horshaw*, 346 A.2d at 341-42; *Santana*, No. 2539 EDA 2022, slip op. at 1-2, 4, 9-10. No evidence was introduced at Appellant's trial that the Glock pistol was incapable of firing ammunition. Accordingly, the Commonwealth was not required to introduce any evidence that the Glock pistol was operable, and the evidence was sufficient to prove the charge of carrying a firearm without a license even if the Commonwealth had introduced no evidence concerning its condition.

Moreover, the Commonwealth did in fact introduce sufficient evidence for the jury to find that the Glock was operable. Even where operability is at issue, it may be proved by evidence that the gun looked and felt like a functional gun, without any evidence of actual firing of the gun. **Layton**, 307 A.2d at 844; **Commonwealth v. Yaple**, 357 A.2d 617, 618 (Pa. Super. 1976); **Commonwealth v. Brown**, No. 724 EDA 2018, slip op. at 7 (Pa. Super. filed August 27, 2019) (unpublished memorandum). Here, the officer testified that he examined the Glock, that it operated normally when he removed the magazine and worked the slide, and that he found nothing that would prevent it from operating normally. N.T. Trial at 128, 133.

Appellant asserts in his remaining, fourth issue that his conviction for carrying a firearm without a license must be vacated because Section 6106 of the Crimes Code, criminalizing the carrying of a firearm without a license, is unconstitutional under the Second Amendment to the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution. These constitutional challenges are questions of law subject to our plenary and *de novo* review. **Commonwealth v. McIntyre**, 314 A.3d 828, 839 (Pa. Super. 2024).

Neither of Appellant's constitutional claims has merit. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In **Bruen**, the United States Supreme

Court held that statutes that permit the state to deny a license to carry a firearm to law-abiding citizens unless they show a special need for a firearm infringe that right to bear arms and are unconstitutional. 597 U.S. at 11-16, 32-34, 70-71. The Supreme Court's opinion in **Bruen**, however, held only that licensing statutes that require a showing of special need for a firearm or give the state uncontrolled discretion to deny a license infringe the right to bear arms and contrasted those statutes with licensing statutes that require issuance of a license to carry a firearm if the applicant passes a background check. **Id.** at 11-16 & n.1, 70-71. Most importantly, two of the justices who were essential to the majority in **Bruen** specifically made clear that the latter type of firearms licensing statute is constitutional, stating:

> **[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes—known as "shall-issue" regimes—that are employed in 43 States.**
>
> The Court's decision addresses only the unusual discretionary licensing regimes, known as "may-issue" regimes, that are employed by 6 States including New York. As the Court explains, New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense. Those features of New York's regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many "ordinary, law-abiding citizens." …
>
> By contrast, **43 States employ objective shall-issue licensing regimes. Those shall-issue regimes may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible**

- 13 -

**requirements. Unlike New York's may-issue regime, those shall-issue regimes do not grant open-ended discretion to licensing officials and do not require a showing of some special need apart from self-defense. ... [S]hall-issue licensing regimes are constitutionally permissible**, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice.

**Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.** Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States.

*Id.* at 79-80 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (emphasis added, citations omitted).

Statutes that require a person to obtain a license to carry a firearm therefore do not violate the Second Amendment where the statute does not require the applicant to show any special need and requires the government to issue the license unless the applicant fails a background check. *Bruen*, 597 U.S. at 79-80 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *Commonwealth v. Nieves-Crespo*, No. 980 MDA 2023, slip op. at 28 (Pa. Super. filed May 17, 2024) (unpublished memorandum); *Commonwealth v. Gutierrez-Santana*, No. 141 MDA 2023, slip op. at 8 (Pa. Super. filed February 2, 2024) (unpublished memorandum). Pennsylvania's firearms licensing statute is precisely this type of statute. Section 6109 of the Crimes Code provides for a criminal and mental health background check and requires that "the sheriff **shall**, within 45 days, issue or refuse to issue a license on the

basis of th[at] investigation and the accuracy of the information contained in the application." 18 Pa.C.S. § 6109(d), (e), (g). Indeed, the Supreme Court in **Bruen** listed Section 6109 as one of the 43 "shall issue" firearms licensing statutes that do not violate the Second Amendment. **Bruen**, 597 U.S. at 13 n.1, 79-80. Because the Pennsylvania firearms licensing statute is constitutional under **Bruen**, Section 6106 of the Crimes Code does not violate the Second Amendment and Appellant's conviction for carrying a firearm without a license does not violate his federal constitutional rights. **Nieves-Crespo**, No. 980 MDA 2023, slip op. at 28; **Gutierrez-Santana**, No. 141 MDA 2023, slip op. at 8.

Appellant's state constitutional argument likewise fails. Article I, Section 21 of our Constitution provides: "The right of the citizens to bear arms in defence of themselves and the State shall not be questioned." Pa. Const. Art. I, § 21. This language is similar to the Second Amendment's language that "the right of the people to keep and bear Arms, shall not be infringed." Our courts have repeatedly treated Article I, Section 21 as not providing any greater restriction on government firearms regulations than the Second Amendment. **Commonwealth v. McKown**, 79 A.3d 678, 690 (Pa. Super. 2013); **Caba v. Weaknecht**, 64 A.3d 39, 50-53 (Pa. Cmwlth. 2013); **Perry v. State Civil Service Commission (Department of Labor and Industry)**, 38 A.3d 942, 954-55 (Pa. Cmwlth. 2011). Moreover, our case law does not construe Article I, Section 21 expansively. The decisions applying Article I,

Section 21 have held that the right to bear arms is subject to restriction in the exercise of the police power for the protection of public safety. *McKown*, 79 A.3d at 690-91; *Minich v. County of Jefferson*, 919 A.2d 356, 361 (Pa. Cmwlth. 2007). In addition, this Court and the Commonwealth Court held prior to *Bruen* that Pennsylvania's firearms licensing statute and Section 6106 of the Crimes Code do not violate Article I, Section 21. *McKown*, 79 A.3d at 691; *Caba*, 64 A.3d at 50-53. Article I, Section 21 therefore does not provide greater protection of the right to bear arms than the Second Amendment, and Appellant's conviction for carrying a firearm without a license does not violate Article I, Section 21. *Nieves-Crespo*, No. 980 MDA 2023, slip op. at 29-30.

For the foregoing reasons, we conclude that Appellant's weight of the evidence and sufficiency of the evidence challenges to his convictions are without merit and that his conviction for carrying a firearm without a license does not violate his constitutional rights. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/01/2024